THE STATE EX REL. FENELON and others, Appellants, vs. GRAFFAM and others, Respondents.

*October 16 — November 5, 1889.*

DRAINS: MANDAMUS. *(1, 2) Application: Invalid proceedings: Lapse of years before proceedings taken. (3, 4) Duplicate applications.*

1. An application for the construction of a drain in two towns under sec. 1365, R. S., upon which proceedings were taken, cannot be used, after the lapse of several years, to inaugurate new proceedings, although the former proceedings have been adjudged void.

2. Town supervisors will not, three or four years after the presentation of an application for the construction of a drain, be compelled by *mandamus* to take action thereon, especially in the absence of proof that there has been no change in the ownership of the lands in question, or that the original petitioners are still a majority of the resident owners and desirous of having the proceedings inaugurated.

3. The petition for a writ of *mandamus* to compel supervisors to construct a drain pursuant to sec. 1365, R. S., should show that duplicate applications were presented to the supervisors of the respective towns.

4. The statute requiring duplicate applications is not complied with by presenting a single application first to one board of supervisors and then to the other, nor by presenting the original application to one board and a copy to the other.

APPEAL from the Circuit Court for *Fond du Lac* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The appellants, as relators, made application to the circuit court of Fond du Lac county for a writ of *mandamus* against the respondents, who were, at the date of such application, supervisors of the town of Springvale, in the said county. The application for the alternative writ was made and the writ issued on the 3d day of July, 1888. The affidavits and petition upon which the writ issued set forth, in substance, that in the month of June, 1884, a petition asking for the laying out and opening of a ditch or drain

through certain lands situate in the towns of Metomen and Springvale in said county, had been, on or about that date, presented to the then supervisors of said towns, asking to have a ditch or drain laid out and constructed partly in each of said towns. Said petition was made under sec. 1365, R. S., and it is claimed that the said petition complied in all respects with the requirements of said section. The petition for the writ of *mandamus* then goes on to allege that the then supervisors of said towns undertook to act upon said petition; that they held a meeting to consider said petition, and determined to grant the prayer thereof, and took such proceedings thereupon that they located said ditch or drain, fixed its dimensions, and ordered the same constructed, and made assessments to pay for the construction thereof; and that, under such proceedings of the respective town boards, a part of said ditch was constructed and some assessments collected and expended by such boards. It further alleges that afterwards, and in the year 1888, it was determined by the county board of supervisors of said county that the assessments made in such proceedings were illegal and void, and tax certificates issued upon the sale of lands for the nonpayment of such assessments were void. It is further alleged that such assessments and proceedings were also adjudged void by the circuit court of Fond du Lac county, on the ground that the said supervisors of said towns had not given notice of their meeting to decide upon such petition, as required by law, and for other irregularities in such proceedings.

The relators then set forth that in the month of May, 1888, they presented the original petition made in 1884, alleging that they presented it "for and on behalf of the parties who had signed the same, and all others interested in the matter of said petition, to the said respondents, the then supervisors of the town of Springvale, and asked and demanded of them that they join the supervisors of the town

of Metomen in giving a notice of hearing to all parties interested in said ditch or drain, in accordance with the law in such case made and provided;" and that they also presented to them a notice for such hearing, signed by the supervisors of the town of Metomen, and requested the respondents, the supervisors of the town of Springvale, to sign such notice, which they refused to do.

Upon the service of the alternative writ the respondents appeared in court, and moved to quash the alternative writ and dismiss the proceedings on the following grounds: *First*. For the reason that the relators fail to state facts sufficient to entitle them, or either of them, to such writ; *second*, that it appears on the face of the application or writ that the relators are not entitled to the relief sought; *third*, that sufficient facts are not set forth in the writ or application to entitle the relators to the relief sought. Other causes are stated, but we think these present the material questions in the case. The circuit court quashed the writ, dismissed the proceedings, and discharged the order to show cause why a peremptory writ should not issue. From this decision and order the relators appeal to this court.

For the appellants there were briefs by *Knowles & Phelps*, and oral argument by *Geo. P. Knowles*.

For the respondents there was a brief by *Duffy & McCrory*, and oral argument by *J. H. McCrory*.

TAYLOR, J. ·After a careful consideration of all the facts stated in the petition for a writ, we are clearly of the opinion that the circuit court properly refused to grant the same, first, for the reason that the former boards of supervisors proceeded to take action upon the original petition presented to them in 1884; that, such action having been taken upon such petition, the petition has performed its functions, and, although the proceedings taken under it by the supervisors have been adjudged void, such petition can-

not now be used to inaugurate new proceedings thereon, after the lapse of nearly four years.

We are also of the opinion that the statute contemplates that, upon the presentation of the petition required by law, the supervisors are bound to take action in a reasonable time, and, if they do not take such action, those interested must, within a reasonable time, proceed to enforce such action; that the petitioners cannot lay by for three or four years, and then ask the courts to enforce action by the supervisors. Such delay would be laches on their part, especially in the absence of any proof that, in the mean time, there has been no change of ownership of the lands in question, and of any proof that the original petitioners are still the majority of the resident owners and desirous of having the proceedings inaugurated.

If it be urged that the petitioners should not be charged with laches in this case, because they had reason to believe that the proceedings commenced by the former supervisors were in all respects regular, and they commenced this proceeding immediately upon their learning that such proceedings were irregular and void, still the objection to compelling the present supervisors to act upon the petition is the same as if no action had been taken by the former supervisors, unless it be shown that the situation in 1888 is the same in regard to the ownership of the lands. It seems to us almost too plain for argument that if the petitioners had presented to the supervisors in June, 1888, a petition setting forth that the petitioners were a majority of the resident owners of the lands sought to be drained in 1884, and omitting wholly to state who were the owners in 1888, when the petition was presented, no court would be justified in ordering the supervisors to act upon such petition. The attempt to compel the supervisors now to act upon the petition of 1884 is, we think, equally objectionable.

There is another objection to granting the writ in this

case. The petition for the writ, and affidavits accompanying the same, fail to show that duplicate petitions were ever made and presented to the supervisors of the respective towns, either in 1884 or in 1888. Sec. 1365, R. S., under which this proceeding was inaugurated, provides that a majority of the resident owners must " make an application in writing, in duplicate, to the supervisors of both of such ; towns," etc. It nowhere appears in the petition and proof upon which the relators ask for relief that any duplicate petitions were ever made or presented to the supervisors of the respective towns. There is in fact no proof that an original petition was presented to the supervisors of the one town and a copy thereof to the supervisors of the other town. The object of requiring duplicate applications was evidently that each town might have, upon its records, evidence of the authority of its supervisors to act in the premises. The statute which requires duplicate applications to be made is not complied with by making a single application, and presenting that, first, to one set of supervisors, and then to the other; nor is it complied with by making a copy of the application, and presenting that to one board of supervisors, and the original to the other board. In legal parlance, a " duplicate application " is not simply a copy of the application. In the American and English Encyclopedia of Law, "duplicate" is defined as "a document which is the same in all respects as some other instrument, from which it is indistinguishable in its essence and its operation." Vol. VI, p. 56. In Burrill's Law Dictionary "duplicate" is defined as " an original instrument repeated." TINDAL, C. J., in *Toms v. Cuming*, 7 Man. & G. 93, says: " The meaning of the word ' duplicate' is that one document resembles the other in all essentials." Justice MAULE, in the same case, says: " The term ' duplicate' means a document which is essentially the same as some other instrument. It is a very different thing from an examined

copy." There is no allegation in the petition of the relators that any duplicate petition was ever made by the petitioners, either in 1884, when the petition was first presented, or at any other time. For this reason, also, the writ was properly denied.

*By the Court.*— The order and judgment of the circuit court are affirmed.